[No. 3824.]

## WILLIAMS ET AL. V. SMITH.

BROKER—*Right to Commissions.* A broker employed by the owner of lands to find a purchaser therefor is not entitled to a commission unless he was the procuring cause of the sale. The evidence examined, and *held* that the broker, though he assisted in the sale was not the procuring cause thereof. (23)

*Appeal from Routt District Court.* HON. JOHN T. SHUMATE, Judge.

MR. PAUL KNOWLES, MR. WM. B. RHODDA and MR. WALTER E. WHITE for appellants.

MR. ARTHUR L. WESSELLS, for KALEY, intervenor.

MR. W. B. McCLELLAND and MR. EDWARD C. STIMSON for appellee.

MORGAN, J.

Smith obtained a judgment in the Routt District Court for $600.00, in his action for a broker's commission, on a sale of real estate; trial without a jury. The law applicable to the facts as disclosed by the record demands a reversal.

In the case of *Sankey v. Cramer,* 24 Colo. App. 16, 131 Pac. 288, the court said:

"Where by the plaintiff's own testimony and by documentary testimony not susceptible of alteration or explanation, it appears that the plaintiff's case is without merit, a judgment in his favor will be reversed, and the court below directed to enter judgment for defendant."

In the case of *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882, the court said:

"The decisions of the different courts are not all in harmony, but there are some well settled rules and legal principles that seem to be well founded in reason that are almost universally conceded as controlling. Two of them only need be invoked in the determination of this case. First, before the broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms, and at a price designated by the principal. * * * Second, the broker must be the efficient agent or procuring cause of the sale. The means employed by him and his efforts must result in the sale. He must find the purchaser and the sale must proceed from his efforts acting as broker."

In the case of *Root v. Barbour,* 51 Colo. 399, 118 Pac. 988, the court said:

"Before a broker is entitled to compensation for a sale of real estate, it must appear there is testimony tending to establish that by his efforts a sale was effected."

It is said in 19 Cyc. 257:

"The fact that the transaction which the broker was authorized to negotiate is finally consummated does not of itself entitle the broker to a commission; he must have been the procuring cause of the transaction, in the absence of some agree-

ment between him and the principal to the contrary, else no compensation is due. This is true, although the broker had negotiated with the person with whom the principal finally contracted; the fact that a broker finds a customer with whom the principal closes a contract without the broker's further aid does not give him a right to a commission, unless he was the procuring cause of the transaction. If, however, the transaction which the broker was authorized to negotiate is consummated as the direct and proximate result of his efforts, he is entitled to a commission, and this is true even though he may have had no personal intercourse with the person with whom the principal enters into the contract."

Stating the undisputed material facts chronologically:

About the first day of August, 1909, the defendant, Williams, owned a ranch in Routt county, Colorado, and had given two or three agents, including Smith, and the firm of Bivens and Wessells, authority to find a buyer. Soon afterward, Williams, Bivens and Wessells, and a Mr. Kaley, from Nebraska, began negotiations looking to a sale of the ranch, and about August 10, Williams, Bivens, Kaley and a friend of his from Nebraska went out and looked at the ranch; Kaley, being the prospective purchaser, liked the ranch and, on ascertining from these parties the price and terms of sale, expressed a willingness to buy it, if some one would take a half interest with him, saying he was not able to buy the whole of it. About the 19th of the same month Mr. Bennett and Mr. Spence, two old acquaintances of Kaley from Nebraska, arrived at Steamboat Springs, and on the same day saw Mr. Kaley who told them about the Williams ranch, giving them the price, $12,000.00, and terms of sale, Kaley saying that he would take a half interest in it, if he could get some one to take the other half. One or two days thereafter Bennett and Spence, hearing that Smith was a man who knew the country well and could show them ranches for sale, hunted him up and asked him to drive them out into the country, and both of them, as witnesses for Smith, testified that they asked him to take them to the Wil-

liams ranch. When they reached this ranch one of them requested Smith to telephone Williams, and to ask him to hold the ranch until they came back that evening. Smith testified that Williams stated to him at this time over the telephone that some parties were out there looking at the ranch that day, but that he would hold it until that evening. As they drove through the town on their return they saw Williams and a conversation occurred in which Williams was introduced and stated that he would take $12,000.00 for the ranch. Smith then told him that he had priced the ranch at $12,000.00, with the crops, and Williams said, "Whatever you said goes." Leaving Williams, they drove to the hotel where Kaley was stopping, where Spence introduced Smith, and all four had a conversation about the ranch, Kaley saying he had seen the ranch before, but nothing was agreed upon. Smith then drove home, leaving Bennett, Spence and Kaley at the hotel. The same evening after supper, Kaley and his friend from Nebraska, together with Bennett and Spence, met at the office of Bivens and Wessells, where the sale was completed. Smith, also, came, and testifies that he "quarreled with Wessels about the commission."

Under the foregoing authorities Smith was neither the moving cause of this sale nor the efficient agent in effecting it. The purchasers obtained all their information prior to seeing Smith, except looking at the ranch, and as they sought Smith for the purpose of having him drive them out to look at the ranch he was not even the procuring cause of their seeing it. The moving and procuring cause of this sale, and the efficient agency that brought it about, occurred before Smith was known in the transaction, and the sale was not the result of his efforts. The judgment of the lower court is therefore reversed with directions to enter judgment for the defendant, and for the intervenor.

Decided March 9th, A. D. 1914. Rehearing denied April 13th, A. D. 1914.