No. 17,790.

R. F. HEADY v. WARD TOMLINSON.
(299 P. [2d] 120)

Decided July 2, 1956.   Rehearing denied July 23, 1956.

34

Mr. WILLIAM B. PAYNTER, Mr. RICHARD B. PAYNTER, for plaintiff in error.

Mr. SAMUEL CHUTKOW, Mr. NOAH A. ATLER, Mr. ARNOLD M. CHUTKOW, Mr. EDWARD I. HALIGMAN, for defendant in error.

*En Banc.*

MR. JUSTICE SPARKS delivered the opinion of the Court.

PARTIES will be herein referred to as they appeared in the trial court where defendant in error was plaintiff and plaintiff in error was defendant.

Plaintiff Tomlinson was a duly licensed Colorado real

estate broker. In May, 1952, the plaintiff was attempting to sell wheat lands in the vicinity of Cope, Colorado, to one Larreau, a prospective buyer. None of the lands which plaintiff had listed were suitable to Larreau. The plaintiff indicated to Larreau that he was badly in need of listings on wheat lands in as much as he had some cash buyers that he was to show lands to on the following day. Larreau replied that he was acquainted with defendant Heady who had wheat lands for sale in the vicinity of Cope, and offered to take the plaintiff to the Heady place so that the plaintiff might obtain a listing.

Plaintiff and Larreau thereupon drove to the defendant's home where Larreau made the introductions. The defendant had never listed his property with any broker and evidently was reluctant to do so. However, upon plaintiff's representation that he would have some cash buyers on the premises the following day the defendant agreed to allow the plaintiff to show the premises, and a commission of $1500 was agreed upon. There is a sharp conflict in testimony as to whether or not the defendant agreed to allow plaintiff to list the place in the event the sale to the cash buyers then contemplated was not consummated. In view of our conclusion we deem this conflict immaterial.

On the following day Larreau advised the plaintiff that he had decided during the night that he would like to purchase the defendant's property if he could do so on terms. A short time later the plaintiff took the prospective cash buyers to the defendant's property and a sale to these buyers failed to materialize. The plaintiff then informed defendant of Larreau's offer, and was advised by the defendant that he would accept it. Subsequently a contract of sale was entered into between the defendant and Larreau, at which time the plaintiff was present.

In due time plaintiff demanded a commission of $1500 from the defendant, which the defendant refused to pay

on the basis that he and not the plaintiff had procured the purchaser. Action was then instituted by the plaintiff in the district court of Washington county against the defendant to recover the sum of $1500. The case was tried to the court without a jury and judgment was entered in favor of the plaintiff, the court concluding that at all times during the transaction the defendant knew the plaintiff to be a real estate broker and therefor should have known that the plaintiff expected a commission.

There is nothing in the record to indicate that the plaintiff in any manner ever attempted to sell the property to Larreau, or that he knew that Larreau had ever considered the purchase of the property. The defendant testified that he had had prior negotiations with Larreau concerning the possibility of the sale. On the witness stand Larreau flatly denied this, and testified that although he and defendant had been previously acquainted, he had heard of the lands being for sale indirectly. This testimony was in direct contradiction to a letter written by Larreau to the defendant prior to the time of the trial, under date of May 3, 1954, (Defendant's Exhibit I), the pertinent parts of which are as follows:

"Then later this same real estater firm (plaintiff) called upon me to look at some land east of Kirk, Colorado, and I did go out to see it, and it didn't suit me, so we went on in to Joes for dinner, and during the meal conversation this real estater said to me that he sure wished he had some listings on some good hard wheat land that he had a buyer for just such, and that tomorrow.

"And Frank (the defendant) it was then that I told him that you had been trying to sell me three quarters, and I didn't think I would buy because of the distance from where I live.

*     *     *     *

"But upon returning home that night my wife and I

sort of decided to buy the land but on different terms than you and I had talked previous and I did try to call you by phone but couldn't get through."

From this exhibit the conclusion is inescapable that the defendant and Larreau had been negotiating for the purchase and sale of the defendant's lands prior to the time that the plaintiff entered into the picture.

Counsel agree that to be entitled to a commission under the ordinary brokerage contract the broker must be the efficient or procuring cause of the sale he is employed to negotiate.

In the case of *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882, the Court said:

" * * * First, before the broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms, and at a price designated by the principal.

* * *

"Second, the broker must be the efficient agent or procuring cause of the sale. The means employed by him and his efforts must result in the sale. He must find the purchaser and the sale must proceed from his efforts acting as broker." See, also, *Williams, et al. v. Smith,* 26 Colo. App. 23, 139 Pac. 1124.

In 12 C.J.S., 209, sec. 91, is found the following:

"While it is not essential that the broker's efforts be the sole cause of the sale or other transaction, it is essential that they be the predominating effective cause, and they are not sufficient to entitle him to a commission where they are merely an indirect, incidental, or contributing cause, or one of the links in a chain of causes."

Measured in the light of the above authorities we first inquire as to whether or not the plaintiff produced a purchaser. This question must be answered in the negative. The defendant and Larreau had already been negotiating for the sale of the property, and the

plaintiff did nothing whatsoever to induce Larreau to purchase the property. In this respect he was a complete stranger to the transaction. Secondly, was the plaintiff the efficient agent or procuring cause of the sale? Again this question must be answered in the negative. Plaintiff's first entry into the transaction was to convey a message from Larreau to the defendant. If he were anyone's agent, then he was the agent of Larreau.

The most that can be said for the plaintiff's case is that he did communicate an offer from Larreau to the defendant which the defendant accepted. In a well written brief, counsel for plaintiff argue that this is sufficient to constitute an agency agreement. With this we cannot agree. If plaintiff's contentions be sustained, then through no fault of the defendant nor through any effort of the plaintiff, the defendant was placed in a position where he must either reject an offer from one with whom he had been negotiating for the sale of his lands or become liable for a commission. It would be a travesty on justice to place the defendant in such a position under the facts of this case.

In the case of *Geier v. Howells*, 47 Colo. 345, 107 Pac. 255, the court said:

"The plaintiff by accident brought the purchaser and the defendant together. Prior to that time he had not been employed to sell the premises. He claims he was then employed by the defendant for the purpose. In such circumstances, the testimony relied upon by him to establish employment should be clear and convincing. It lacks these essential requisites. For this reason, on the record before us, the judgment should have been for the defendant."

We point out that the facts in the above case were much more favorable to the plaintiff than in the instant case. As a summary of the instant case we hold that where a buyer and seller have been previously negotiating with one another for the sale of land, a mere offer communicated through the medium of a real estate

broker and accepted by the owner, even though the broker sits in on the final consummation, does not entitle the broker to a commission without a showing that it was through the broker's efforts that the sale took place.

For the reasons herein expressed the judgment is reversed and the cause remanded with directions to enter judgment for the defendant.