No. 21034.

Dorothy May Baugher *v.* Kenyon L. Baugher

(408 P.2d 443)

Decided December 13, 1965.

Sheldon & Nordmark, Richard C. McLean, for plaintiff in error.

Law, Nagel & Clark, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

DOROTHY BAUGHER, who will hereinafter be referred to as Dorothy, was granted a non-contested decree in divorce from her husband, Kenyon Baugher, who will hereinafter be referred to as Kenyon, on the grounds of cruelty. This writ of error relates to the division of their property and the permanent alimony award as made by the trial court in connection with the aforementioned divorce decree.

The order of the trial court dividing the property of the parties and ordering permanent alimony is essentially as follows:

1. certain realty upon which was located the Baugher family home and which was owned by Dorothy and Kenyon in joint tenancy was awarded to Dorothy;

2. the aforementioned realty, valued at approximately $26,000, was subject to an encumbrance in the amount of $1,500 and this indebtedness was decreed to thereafter be the obligation of Dorothy;

3. Dorothy and Kenyon were each awarded and permitted to retain the automobile then in his or her possession;

4. the personal property in the family home was given to Dorothy;

5. Kenyon was awarded various and sundry items of personal property, including such divers things as a silver shot measure; a "Daisy" manual can opener; a "Big Boy" barbecue set; and a king sized bed; and

6. Kenyon was ordered to pay Dorothy as permanent alimony the sum of $150 per month for a period of ten months *only.*

Dorothy makes no complaint here about that portion of the order which divided the property between the parties and which gave her the family home. Rather she complains only about the permanent alimony award

as entered by the trial court, stating that in this particular the trial court abused its admitted discretionary power. Furthermore, according to Dorothy, the trial court in its alimony order failed to take into consideration Kenyon's earning capacity, or potential, as distinguished from his actual earnings as of the time of the hearing. In this regard Kenyon at the time of the hearing was making less than one hundred dollars per month as a real estate salesman; whereas some two or three years prior thereto he was making about $35,000 per year as the sales manager for a dental supply firm.

■ The general rule is that this court may not upset a judgment and order of a trial court relating to division of property and alimony unless it clearly appears that, on the basis of the evidence before it, the trial court abused its discretion by acting arbitrarily and unreasonably. See *Cohan v. Cohan,* 150 Colo. 249, 372 P.2d 149. This rule is easily stated — but not so easily applied, as the point where reasonable discretion ends and arbitrary action sets in can not be pinpointed with mathematical exactitude. Let us therefore briefly review the evidence which was before the trial court in order to ascertain whether the trial court did abuse its discretion by any arbitrary or highhanded action.

Kenyon and Dorothy lived together as husband and wife for some thirteen years. There was no issue of this marriage, though Dorothy had two children by a previous marriage. Except for two short periods of temporary employment as a saleslady in a department store, Dorothy devoted all her time to the management of the family home.

At the time when he married Dorothy, Kenyon was employed as a sales manager for a dental supply firm. He continued in this employment until about one year before the divorce at which time he was discharged by his employer. During this employment Kenyon earned on the average about $25,000 per year, and, as already

mentioned, in 1960 and 1961 his annual earnings approximated $35,000.

More than a year before the divorce Kenyon lost his job and he was unable to thereafter obtain any comparable type of employment. Kenyon was then forty-nine years of age and he recounted in great detail his unsuccessful efforts to obtain work similar to that which he had previously been doing. Finally, Kenyon accepted employment as a real estate salesman on a straight commission basis and as of the date of the hearing he was earning something less than one hundred dollars per month.

Outside of household furnishings, two automobiles and various items of personal belongings, the only property owned by the parties was the family home which was situate on an acre and a quarter tract of land in Jefferson County.

It was on this sort of a factual situation that the trial court entered the order which Dorothy now seeks to have reversed. Dorothy understandably directs our attention solely to the alimony order as made by the trial court, to the exclusion of the order of the trial court which awarded her the family home. We believe that both of these matters must be considered together, however, as the division of property and permanent alimony are not unrelated, but on the contrary are inextricably interwoven, one with the other.

In the instant case, it is apparent that in the overall the trial court intended that Dorothy ultimately be given the family home free and clear, and that under such circumstances Kenyon would pay no permanent alimony. This was accomplished by ordering Kenyon to pay Dorothy as permanent alimony the sum of $1,500 only, which was the precise amount of the outstanding encumbrance against the family home. All of this was decreed at a time when Kenyon was — and had been for some six months prior to the hearing — making less than one hundred dollars per month as a real estate

salesman, and prior thereto had been unemployed for about one year.

█ █ In *Fahey v. Fahey*, 43 Colo. 354, 96 Pac. 251, this court stated that permanent alimony should be reasonable and just, taking into consideration the estate of the husband and his earning capacity. There is nothing in the record to indicate that the trial court ignored or refused to consider Kenyon's earning capacity, and though the trial court may properly consider a husband's earning capacity, it necessarily must be concerned also with the realities of the case before it. Without belaboring the point and without going into unnecessary detail, our examination of the record convinces us that the trial court in its order did not abuse its discretionary power by any arbitrary or highhanded action, and the judgment complained of under well-settled principles must be, and hereby is, affirmed.

MR. JUSTICE DAY and MR. JUSTICE SCHAUER concur.